IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| J. IRVIN BEATLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:18-cv-00037-MHL |
| | ) | |
| CHARLES E. AYERS, JR., | ) | |
| 312 Clovelly Road | ) | |
| Richmond, VA 23221 | ) | |
| | ) | |
| RALPH L. COSTEN, JR., | ) | |
| 205 Wexleigh Drive | ) | |
| Richmond, VA 23229 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JESSE L. BARBER, | ) | |
| 101 Queen Anne Drive | ) | |
| Hopewell, VA 23860 | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

For his Complaint, the plaintiff, J. Irvin Beatley ("Beatley"), by counsel, states as follows:

**Preliminary Statement**

1. This is a diversity case arising out of defendant Virginia residents' breach of a settlement agreement with plaintiff, a resident of South Carolina. Plaintiff had asserted claims against defendants for payments owed to him in connection with a failed real estate development in Hopewell, Virginia known as Anchor Point. On June 16, 2017, defendants entered into a

written settlement agreement ("the Settlement Agreement") with Beatley, but it is now apparent that at the time they entered into the Settlement Agreement defendants had no intention of performing their obligations pursuant to it, but rather entered into it solely to avoid an imminent trial date in the Circuit Court of the City of Richmond and a verdict against them. In this Complaint, Beatley seeks compensatory and punitive damages against defendants for breach of contract, conspiracy to breach contract, fraudulent inducement, and conspiracy to commit fraud.

## The Parties

2.  Plaintiff Beatley is an eighty-nine-year-old man who for many years has been a member of Anchor Point Ventures, L.L.C. ("APV"), a limited liability company which was the owner of certain real property in the City of Hopewell, Virginia which APV and a subsequently formed limited liability company of which Beatley is also a member, MPD Ventures, LLC ("MPD"), have endeavored to develop to include condominiums, single-family homes, and a marina. The development is known as Anchor Point.

3.  Beatley is a resident and a citizen of South Carolina. Prior to that he was a resident and citizen of Florida.

4.  Defendant Charles E. Ayers, Jr. ("Ayers") is a citizen of Virginia and a resident of the City of Richmond who also maintains an office in the City of Richmond. Ayers regularly conducts affairs and business activities in the City of Richmond. Ayers is also a member of APV and MPD.

5.  Ayers is a disbarred lawyer whose license to practice law was revoked after a career of unethical conduct.

6.  For instance, in 2011 Ayers was reprimanded by the Virginia State Bar for engaging in improper business deals with his clients. In 2013, Ayers surrendered his license to

practice law with an admission that he had participated in a business transaction with a client in violation of the terms of his 2011 reprimand.

7. Ayers has also acted as attorney at various times for his co-defendants and plaintiff Beatley and/or companies in which they had a controlling interest.

8. Defendant Ralph L. Costen, Jr. ("Costen") is a citizen of Virginia and a resident of Henrico County. Costen is also a member of APV and MPD.

9. Defendant Jesse L. Barber ("Barber") is a citizen of Virginia and a resident of the City of Hopewell. Barber is also a member of APV and MPD.

**Jurisdiction and Venue**

10. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, in that parties are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

11. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 in that each defendant resides in this district and all or a substantial part of the events or omissions giving rise to Beatley's claim occurred within this District, and defendants are subject to personal jurisdiction in this District.

**Facts**

12. At the request of defendants, and over may years, Beatley contributed large sums of money for the development of Anchor Point in the form of cash contributions, loans, and loan payments. For many years, Beatley has been making regular payments on loans in which the loan proceeds were used for the development of Anchor Point, and continues to make substantial monthly interest payments.

13. Beatley's contributions to Anchor Point, including the loans to him from banks where the proceeds were turned over to APV, were in reliance upon defendants' promises that they would reimburse him for their share of the contributions, loans, and loan payments made by him if he was not reimbursed by APV.

14. Beatley filed a lawsuit against defendants in the Circuit Court of the City of Richmond ("the Lawsuit") for breach of defendants' obligations to reimburse Beatley for the large sums of money he contributed and/or loaned in connection with Anchor Point.

15. In the Lawsuit, and for the first time, defendants denied any personal liability to Beatley, despite their personal agreements to reimburse him and despite their admissions in other documents that they were personally obligated to reimburse him.

16. A jury trial in the Lawsuit was scheduled for June 26-27, 2017.

17. On June 16, 2017, there was a mediation conducted in Henrico County by retired Judge Michael C. Allen of the Circuit Court of Chesterfield County, Virginia.

18. Present at the mediation were Judge Allen, Beatley and his counsel, defendants and their counsel, and Kevin Walsh ("KW"), a representative and agent of John H. Woodfin, Jr. ("JW") who is the administrator of the estate of his father, who had been a member of APV and MPD, but was not a party to the agreements upon which the Lawsuit was based.

19. JW's father, who had been a friend and client of Ayers for many years, was also a principal in Grove and Libbie Services Co., LLC ("GL"), which upon information and belief, is a creditor of MPD, and which asserts that it is also a creditor of Beatley and defendants.

20. Plaintiff and defendants entered into the Settlement Agreement at the mediation on June 16, 2017. A copy of the Settlement Agreement signed by Beatley and defendants is attached as Exhibit A.

4

21. The Settlement Agreement provided in part that defendants "shall pay Beatley $134,000 on or before July 17, 2017", and that defendants agreed to assume a loan from Fulton Bank to Beatley in the amount of approximately $157,000 ("the Fulton Bank Loan").

22. Beatley agreed in good faith to the Settlement Agreement, in reliance on defendants also acting in good faith.

23. Pursuant to the Settlement Agreement, counsel for the parties endorsed an order to be presented to the Richmond Circuit Court ("the Order"), stating that the parties had reached a settlement and continuing the case. A copy of the Order is attached Exhibit B.

24. Unbeknownst to Beatley, at the time they entered into the Settlement Agreement, defendants had no intention of paying Beatley the $134,000 they had agreed to pay him.

25. Defendants entered into the Settlement Agreement to avoid the trial date in the Circuit Court.

26. Defendants were not dealing with Beatley in good faith in connection with the Settlement Agreement.

27. When he entered into the Settlement Agreement, Beatley thought defendants were acting in good faith, and did not realize that defendants had no intention of performing under the Settlement Agreement when they signed it on June 16, 2017.

28. Upon information and belief, and beginning at least as early as September 21, 2016, and at other times prior to, at, and after the mediation on June 16, 2017, defendants discussed with KW, JW, and defendants' counsel their intention not to pay Beatley any amount required pursuant to a settlement with Beatley.

29. Upon information and belief, defendants, or at least defendants Ayers and Costen, who also acted on behalf of defendant Barber, with Barber's consent, discussed the plan with JW

5

at weekly Monday meetings between defendants and JW which took place at Ayers' office, both prior to and after June 16, 2017.

30. Defendants combined, agreed, and conspired with each other, KW, and JW to have GL make demand upon Beatley prior to July 17, 2017 (the date by which defendants were required under the Settlement Agreement to pay Beatley $134,000) for payment by Beatley to GL of all or a portion of any amount he was to receive pursuant to the Settlement Agreement.

31. As part of this plan, but unknown to Beatley, defendants would in fact make no payments to Beatley pursuant to the Settlement Agreement.

32. Defendants expected that, when faced with GL's demand, Beatley would not press for payment from defendants.

33. By their actions described above, defendants conspired with each other, KW, and JW to breach the Settlement Agreement.

34. Beginning prior to June 16, 2017, and continuing thereafter, defendants agreed and conspired with each other to fraudulently induce Beatley to agreeing to a settlement with which defendants had no intention of complying, and to induce Beatley to sign the Settlement Agreement and continue the trial date.

35. On the afternoon of July 13, 2017, two business days before defendants were obligated to pay Beatley $134,000 pursuant to the Settlement Agreement, KW, at JW's request, placed a telephone call to counsel for plaintiff.

36. In the telephone call on July 13, 2017, KW stated that he was calling on behalf of JW, who wanted to know how much of the settlement proceeds Beatley was going to pay to GL in order to satisfy an alleged obligation that Beatley had to GL.

6

37. In response to KW, counsel for Beatley stated, among other things, that he was surprised to receive the call, four weeks after the mediation, because KW, on behalf of JW, was present at the mediation and had not raised this issue at that time.

38. The telephone call made by KW and referred to in the preceding paragraphs was made with the knowledge of defendant Ayers and JW.

39. The telephone call made by KW and referred to above was made with the knowledge of defendant Costen and JW.

40. The telephone call made by KW and referred to above was made with the knowledge of counsel for defendants.

41. The telephone call referred to above was made in furtherance of defendants' conspiracy to breach the Settlement Agreement and to defraud Beatley.

42. Defendants did not pay Beatley any amount on or before July 17, 2017 pursuant to the Settlement Agreement, and they have not paid any amount to Beatley since that time.

43. After July 17, 2017, counsel for defendants failed to respond to several emails and at least one telephone call from counsel for Beatley requesting payment and also requesting defendants to state whether they intended to comply with the Settlement Agreement and, if so, when.

44. On August 3, 2017, prior to a hearing in the Circuit Court of City of Hopewell, counsel for defendants stated to counsel for plaintiff that he was aware that there had been communications by or on behalf of JW with plaintiff.  (JW was one of the clients that counsel for defendant was representing in the matter in the Hopewell Circuit Court.)

45. Copies of some the unanswered e-mails from counsel for plaintiff to counsel for defendants are attached as Exhibit C.

46. In furtherance of defendants' plan and conspiracy to defraud Beatley and to breach the Settlement Agreement, by letter dated August 4, 2017 to Beatley, JW, on behalf of GL, demanded that Beatley pay GL $100,000, and that upon receipt of such payment on or before August 31, 2017, GL "will relinquish any rights it may otherwise have to any amounts you have collected or may collect from [defendants]." A copy of JW's letter to Beatley is attached as Exhibit H.

47. GL had no rights to any amounts owed to Beatley by defendants.

48. Upon information and belief, the letter dated August 4, 2017 was written with the knowledge and agreement of defendants and their counsel, and was in furtherance of the plan to defraud Beatley and to breach the Settlement Agreement.

49. In furtherance of the conspiracy to defraud Beatley and to breach the Settlement Agreement, by letter dated August 17, 2017 to plaintiff *and defendants*, JW, on behalf of GL, stated that, "to the extent that any amount is paid to any one or more of you through the mediation process among you, it is [GL's] expectation that any such amounts shall be remitted immediately and directly to [GL].…" JW further stated that "Any failure by any of you to remit any such payment immediately upon receipt shall be considered as a breach of the terms of your personal guaranty." A copy of JW's letter dated August 17, 2017 is attached as Exhibit I.

50. Upon information and belief, the letter dated August 17, 2017 was written with the knowledge and agreement of defendants and their counsel, and was in furtherance of the plan to defraud Beatley and to breach the Settlement Agreement.

51. Furthermore, as defendants and JW knew, none of the defendants was to receive any amount pursuant to the "mediation process"; only plaintiff Beatley was to receive payment.

52. Counsel for Beatley requested KW and JW to send counsel for Beatley copies of all documents relied upon by JW to support the allegation that Beatley is indebted to GL and that a failure by Beatley to remit any portion of the settlement proceeds to him would be a breach of Beatley's obligation to GL, but JW and KW have ignored this request, and have not provided any documents pursuant to counsel for Beatley's request.

53. On August 30, 2017, a status conference in the Lawsuit was held before Judge Beverly Snukals of the Richmond Circuit Court.

54. At the status conference, and in furtherance of defendants' conspiracy, counsel for defendants made a number of false statements to the Court regarding defendants' failure to pay Beatley as required by the Settlement Agreement. A copy of the transcript of the status conferenced is attached as Exhibit D.

55. At the status conference, the following exchange took place between Judge Snukals and counsel for the parties:

> MR. BURKE:   I'm not necessarily asking for an order today, your Honor, but I would ask the Court to ask Mr. Faraci whether the defendants intend to honor the settlement agreement, and if so when.
>
> THE COURT:   Okay. Well, what good is that going to do?
>
> MR. BURKE:   Well --
>
> THE COURT:   And do your clients intend to honor it?
>
> MR. FARACI:   I thought I answered that, your Honor.
>
> THE COURT:   Do they intend to honor it?
>
> MR FARACI:   They do.

See Exhibit D at pages 10-11.

56. The statement to Judge Snukals by counsel for defendant that defendants intended to honor the Settlement Agreement was false when it was made.

9

57. In fact, as of August 30, 2017, the date of the status conference, defendants had no intention to pay Beatley any amount pursuant to the Settlement Agreement.

58. Another excuse offered by counsel for defendants at the status conference for defendants' failure to pay Beatley pursuant to the Settlement Agreement was that defendants were confused over who to pay, because they had received a letter from counsel for plaintiff's former law firm asserting an attorney's lien on a portion of the settlement proceeds. See Exhibit D at pages 5-6. A copy of the letter from the law firm is attached as Exhibit E.

59. However, as counsel for defendants knew, and as shown by Exhibit E, the letter asserting the attorney's lien was dated August 15, 2017, twenty-nine days after defendants were obligated to pay Beatley $134,000 under the Settlement Agreement.

60. Thus, as counsel for defendants knew when he made the statement to Judge Snukals at the status conference, the August 15, 2017 letter from the law firm could not possibly have been the reason defendants did not pay Beatley on or before July 17, 2017.

61. At the status conference on August 30, 2017, counsel for Beatley advised Judge Snukals and counsel for defendant that Beatley agreed that the money owed to counsel for plaintiff's former firm could be paid to the firm, and that the remainder of the $134,000 should be paid to Beatley. See Exhibit D at pages 11 through 14.

62. Despite that representation, defendants have made no payment towards the $134,000 obligation under the Settlement Agreement.

63. Counsel for defendants' statements to Judge Snukals at the status conference were made in furtherance of defendants' plan to defraud Beatley and to breach the Settlement Agreement and to avoid paying Beatley what they had agreed to pay him pursuant to the Settlement Agreement.

64. Defendants have not performed their obligation under the Settlement Agreement to pay Beatley $134,000.

65. Defendants' failure to pay Beatley any portion of the $134,000 constitutes a breach of the Settlement Agreement and a material breach of contract by defendants.

66. Defendants owe plaintiff $134,000 pursuant to the Settlement Agreement.

67. Defendants' failure to pay Beatley as required by the Settlement Agreement was part of the plan that was agreed to by defendants, KW, and JW prior to, at, and after the mediation on June 16, 2017.

68. As of the date of this Complaint was filed, defendants had no intent to pay Beatley pursuant to the Settlement Agreement.

69. The actions of defendants described above were taken with actual malice towards Beatley and/or in conscious and/or wanton disregard of Beatley's rights.

70. With respect to factual allegations in this Complaint which are preceded by the words "upon information and belief," counsel for plaintiff believes that there will likely be further evidentiary support after a reasonable opportunity for discovery. Because of the nature of defendants' conduct and the sophistication of defendants Ayers and Costen, such facts are peculiarly within the possession and control of defendants. Moreover, the undisputed factual allegations of this Complaint make the inference of defendants' culpability highly plausible.

## Count I – Breach of Contract

71. Plaintiff realleges the allegations contained in paragraphs 1 through 70 as though fully alleged herein.

72. By their actions described above, defendants have materially breached the Settlement Agreement and are liable to Beatley for breach of contract.

73. Furthermore, pursuant to paragraph 3 of the Settlement Agreement, defendants agreed to assume plaintiff's obligations with respect to the Fulton Bank Loan.

74. Although defendants have made interest payments on the Fulton Bank Loan since June 16, 2017, defendants have repeatedly failed to make the interest payments by the date that they were due, with the result that Fulton Bank has notified Beatley that his payments were overdue.

75. Paragraph 3 of the Settlement Agreement also provides that defendants "agree to use all best efforts to obtain Fulton Bank's consent to their assumption of the loan and the release of plaintiff from all obligations relating to the loan."

76. However, defendants have failed to make any efforts, let alone "best efforts," to obtain Fulton Bank's consent to their assumption of the loan and the release of plaintiff from all obligations relating to the Fulton Bank Loan.

77. Fulton Bank has not released plaintiff from his obligations relating to the Fulton Bank Loan.

78. Defendants' failure to make the interest payments on the Fulton Bank Loan when due, their failure to use all best efforts to obtain Fulton Bank's consent to their assumption of the loan and release the plaintiff from all obligations relating to the loan, and their failure to pay Beatley $134,000 on or before July 17, 2017 constitute material breaches of contract.

79. Plaintiff at all times has been ready, willing and able to comply with any and all of his obligations pursuant to the Settlement Agreement.

80. Plaintiff has suffered damages as a result of defendants' breaches of the Settlement Agreement in the amount of at least $291,000, plus plaintiff's share of the cost of the mediation in the amount of $3,445.22, plus any other damages, costs, expenses and attorney's

fees incurred and to be incurred as a result of defendants' failure to assume the Fulton Bank Loan.

## Count II – Conspiracy to Breach Contract

81. Plaintiff realleges the allegations contained in paragraphs 1 through 80 as though fully alleged herein.

82. As stated above, defendants conspired with each other, KW, and JW to breach the Settlement Agreement, and defendants are liable to Beatley for the damages he has suffered as a result of their actions.

83. Beatley has been damaged by defendants' conspiracy to breach the Settlement Agreement in the amount of at least $291,000 plus plaintiff's share of the cost of the mediation in the amount of $3,445.22, all attorney's fees incurred since June 16, 2017, including but not limited to his attorney's fees and costs incurred in this litigation, plus any other damages, costs, expenses and attorney's fees incurred and to be incurred as a result of defendants' failure to assume the Fulton Bank Loan.

84. Beatley is entitled to the recovery of his attorney's fees and costs in this litigation because defendants have acted vexatiously and in bad faith. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46 (1991); *Kreischer v. Kerrison Dry Goods Co.*, 2000 U.S. App. LEXIS 20895 (4th Cir. 2000); *Kemp v. Miller*, 166 Va. 661, 680 (1936).

85. In addition, defendants are liable to Beatley for punitive damages in at least the amount of $350,000.

## Count III – Fraudulent Inducement

86. Plaintiff realleges the allegations contained in paragraphs 1 through 85 as though fully alleged herein.

13

87. None of the defendants intended to comply with their obligations under the Settlement Agreement at the time they entered into it.

88. Each of the defendants knew that Beatley would rely on the promises they made in the Settlement Agreement, and in fact Beatley did rely on defendants' promises.

89. Defendants fraudulently induced Beatley to enter into the Settlement Agreement in order to continue the imminent trial date and avoid a verdict against them.

90. In reliance on defendants' promises in the Settlement Agreement, including defendants' promise to pay him $134,000 on or before July 17, 2017, and their promise to use all best efforts to obtain Fulton Bank's consent to their assumption of the loan and the release of plaintiff from all objections relating to the Fulton Bank Loan, and in reliance of defendants' acting in good faith in entering into the Settlement Agreement, Beatley signed the Settlement Agreement and authorized his counsel to endorse the Order continuing the case in the Circuit Court of the City of Richmond.

91. Beatley would not have entered into the Settlement Agreement or agreed to a continuance of the trial date if he had known that at the time they entered into the Settlement Agreement defendants did not intend to perform their obligations pursuant to the Settlement Agreement.

92. As a result of defendants' fraud, Beatley has suffered damages in at least the amount of $291,000, plus his share of the cost of the mediation in the amount of $3,445.22, his attorney's fees incurred in connection with preparation for and attendance at the mediation, all attorney's fees incurred since June 16, 2017 in connection with defendants' fraud, including but not limited to his attorney's fees and costs incurred in this litigation, and all other costs,

expenses, damages, and attorney's fees incurred or to be incurred as a result of defendants' failure to assume the Fulton Bank Loan.

93. Under Virginia law, Beatley is entitled to the recovery of his attorney's fees in this case as a result of defendants' fraud. *E.g., Prospect Development Co. v. Bershader*, 258 Va. 75 (1999).

94. In addition, defendants are liable to Beatley for punitive damages in at least the amount of $350,000.

### COUNT IV – CONSPIRACY TO COMMIT FRAUD

95. Plaintiff realleges the allegations contained in paragraphs 1 through 94 as though fully alleged herein.

96. By their actions described above, defendants conspired to fraudulently induce Beatley to sign the Settlement Agreement and continue the trial date.

97. Beatley has been damaged by such conspiracy in the amount of at least $291,000, plus his share of the cost of mediation in the amount of $3,445.22, his attorney's fees incurred in connection with preparation for and attendance at the mediation, all attorney's fees and costs he has and will incur since June 16, 2017 in connection with defendants' fraud, including but not limited to attorney's fees and costs incurred in connection with this litigation, and all other costs, expenses, damages, and attorney's fees incurred or to be incurred as a result of defendants' failure to assume the Fulton Bank Loan.

98. In addition, defendants are liable to Beatley for punitive damages in at least the amount of $350,000.

15

**Relief Requested**

99. Beatley demands the following relief against defendants:

    a. A judgment against defendants, jointly and severally, pursuant to Count I, for at least the amount of $291,000 plus interest thereon from July 17, 2017 until paid, and plaintiff's share of the cost of the mediation in the amount of $3,445.22, and any other damages, costs, expenses, and attorney's fees incurred by plaintiff prior to trial as a result of defendants' failure to assume the Fulton Bank Loan;

    b. A judgment against defendants, jointly and severally, pursuant Count II for at least the amount of $291,000 plus interest thereon from July 17, 2017 until paid, and plaintiff's share of the cost of the mediation in the amount of $3,445.22, and all attorney's fees incurred since June 16, 2017, including but not limited to his attorney's fees and costs incurred in this litigation, and all other damages, costs, expenses, and attorney's fees incurred by plaintiff prior to trial as a result of defendants' failure to assume the Fulton Bank Loan; plus punitive damages against defendants, jointly and severally, in the amount $350,000;

    c. A judgment against defendants, jointly and severally, pursuant to Count III for at least $291,000 plus interest thereon from July 17, 2017 until paid, and plaintiff's share of the cost of the mediation in the amount of $3,445.22, and plaintiff's attorney's fees incurred in connection with preparation for and attendance at the mediation, and all attorney's fees incurred since June 16, 2017, including but not limited to his attorney's fees and costs incurred in this litigation, and all other costs, expenses, damages and attorney's fees incurred by plaintiff prior to trial as a result of defendants' failure to assume the Fulton Bank Loan, plus punitive damages against defendants, jointly and severally, in the amount of $350,000;

    d.    A judgment against defendants, jointly and severally, pursuant to Count IV for at least $291,000 plus interest thereon from July 17, 2017 until paid, plus plaintiff's share of the cost of the mediation in the amount of $3,445.22, and plaintiff's attorney's fees incurred in connection with preparation for and attendance at the mediation, and all attorney's fees incurred since June 16, 2017 in connection with defendants' fraud, including but not limited to his attorney's fees and costs incurred in this litigation, and all other costs, expenses, damages and attorney's fees incurred by plaintiff prior to trial as a result of defendants' failure to assume the Fulton Bank Loan, plus punitive damages against defendants, jointly and severally, in the amount of $350,000; and

    e.    All further relief to which plaintiff may be entitled, including, but not limited to interest and costs.

J. IRVIN BEATLEY

By    /s/ John K. Burke, Jr.
    Of Counsel

John K. Burke, Jr. (VSB No. 16798)
J. K. BURKE LAW FIRM PLC
5600 Grove Avenue
Richmond, Virginia 23226
Telephone:  (804) 835-5929
Facsimile:  (804) 285-7779
john@burkelf.com

    *Counsel for plaintiff*