IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

J. IRVIN BEATLEY,

      **Plaintiff,**

v.                                                                                                             Civil Action No. 3:18cv37

CHARLES E. AYERS, JR., *et al.*,

      **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendants Charles E. Ayers, Jr., Ralph L. Costen, Jr., and Jesse L. Barber's (collectively, the "Defendants") Motion to Dismiss Count Two of Plaintiff J. Irvin Beatley's Complaint (the "Motion to Dismiss"). (ECF No. 6.) Beatley responded and the Defendants replied. (ECF Nos. 10, 11.) Accordingly, the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[1] For the reasons that follow, the Court will deny the Motion to Dismiss. (ECF No. 6.)

### I. Factual and Procedural Background

#### A.     Procedural History

These allegations arise from a June 16, 2017 Settlement Agreement (the "Agreement") between Beatley and the Defendants. Beatley alleges that the Defendants failed to comply with the Agreement, which required the Defendants to "pay Beatley $134,000 on or before July 17,

---

[1] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332.

2017," and "assume a loan from Fulton Bank to Beatley in the amount of approximately $157,000." (Compl. 5, ECF No. 1.)

Beatley filed his four-count Complaint with this Court on January 16, 2018, alleging breach of contract, conspiracy to breach contract, fraudulent inducement, and conspiracy to commit fraud. On February 12, 2018, the Defendants jointly filed both an answer and the Motion to Dismiss. On February 23, 2018, Beatley filed a Motion for Partial Judgment on Count One of the Complaint, the breach of contract claim (the "Motion for Partial Judgment"). (ECF No. 8.) On April 20, 2018, the Defendants moved to amend their response to Beatley's Motion for Partial Judgment, seeking to integrate information about money they paid to Beatley on April 12, 2018, and April 20, 2018, totaling $139,949.60. These payments satisfied the portion of the Agreement that Beatley's Motion for Partial Summary Judgment concerned. All parties agreed that these payments rendered Beatley's Motion for Partial Judgment on Count One moot. Accordingly, on May 1, 2018, this Court denied Beatley's Motion for Partial Judgment as moot.

### B. Factual Allegations in the Complaint[2]

These allegations in the Complaint arise from the Defendants' alleged failure to comply with the Agreement, which was the outcome of a separate lawsuit Beatley filed against the Defendants in Circuit Court for the City of Richmond (the "Richmond City Lawsuit").

Beatley and the Defendants are members of Anchor Point Ventures, LLC ("APV") and MPD Ventures, LLC ("MPD"). APV owned property in Hopewell, Virginia, that MPD sought to develop into a residential community called Anchor Point. During the course of Anchor Point's development, Beatley personally contributed "large sums of money" to the Anchor Point project "in the form of cash contributions, loans, and loan payments." (Compl. 3.) Beatley made

---

[2] For purposes of the Motion to Dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Beatley. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

these contributions in reliance on the Defendants' promises to personally reimburse Beatley "if he was not reimbursed by APV." (*Id.* at 4.)

When the Defendants failed to repay Beatley, he filed the Richmond City Lawsuit. With trial scheduled for June 26–27, 2017, retired Judge Michael Allen conducted mediation on June 16, 2017, between Beatley, the Defendants, and Kevin Walsh, a representative of John Woodfin, Jr., whose late father was a member of APV and MPD. Through mediation, the group reached a settlement. The Defendants promised to: (1) pay Beatley $134,000 on or before July 17, 2017; and, (2) assume a loan that Beatley had from Fulton Bank for $157,000. Pursuant to the Agreement, on June 21, 2017, the Circuit Court for the City of Richmond ordered the case continued.

On August 30, 2017, the Richmond City Circuit Court held a status conference. At that time, the Defendants had yet to fulfill their obligations under the Agreement. They had not paid Beatley $134,000, nor had they fully assumed the loan from Fulton Bank, though the Defendants had made two of the loan's monthly payments. At the status conference, the Defendants' counsel explained that his clients fully intended to fulfill the terms of the Agreement but were hindered by delayed paperwork from Fulton Bank and notice of two of Beatley's uncollected debts which caused confusion about who the Defendants should pay.

One of these debts is a lien on Beatley for attorney's fees he owes to the law firm Setliff & Holland. The Defendants learned of this lien through a letter dated August 15, 2017, nearly a month after the Agreement's obligations were due. Defendants also pointed to a debt owned by Grove & Libbie Service Co., LLC ("GL") as an explanation for their failure to fulfill the Agreement. Beatley and the Defendants had a joint loan from Fulton Bank, of which they each personally guaranteed a portion. Beatley personally guaranteed $100,000 of the loan. GL, a company in which John Woodfin Jr.'s late father was a principal, purchased this debt from

3

Fulton Bank in July 2014. In his Complaint, Beatley alleges that the Defendants conspired to threaten him with collection of this GL-owned debt as a way to discourage him from enforcing the Agreement.

Beatley alleges that as of January 16, 2018, when he filed the Complaint in this Court, the Defendants had not fulfilled the terms of the Agreement. Beatley further contends that the Defendants never intended to fulfill the terms of the Agreement, even at the time it was signed. Beatley argues that the Defendants conspired with each other, Kevin Walsh, and John Woodfin Jr., to "induce Beatley into agreeing to a settlement with which defendants had no intention of complying," and to "make demands upon Beatley [prior to July 17, 2017] . . . for payment . . . to GL for all or a portion of any amount he was to receive pursuant to the Agreement." (*Id.* at 6.) Beatley asserts that the Defendants and John Woodfin, Jr., discussed this plan during "weekly Monday meetings," and crafted this plan to avoid trial and a potentially adverse verdict in the Richmond City Lawsuit, as well as to discourage Beatley from demanding the Defendants fulfill the terms of the Agreement. (*Id.*)

Beatley recounts a series of communications between the parties as evidence of this conspiracy. On July 13, 2017, days before the Defendants' July 17, 2017 deadline to pay Beatley $134,000, Kevin Walsh called Beatley on behalf of John Woodfin, Jr. During the call, Walsh "wanted to know how much of the settlement proceeds Beatley was going to pay to GL in order to satisfy" his debt to the company, a concern that Walsh had not raised during mediation four weeks earlier. (*Id.*) Beatley alleges that Ayers, Costen, and the Defendants' counsel knew about this call before it happened. After July 17, 2017, the Defendants' counsel failed to return multiple emails from Beatley's counsel requesting an explanation for the Defendants' failure to timely pay $134,000. On August 4, 2017, John Woodfin, Jr., sent Beatley a letter on behalf of GL demanding "that Beatley pay GL $100,000." (Compl. Ex. H, ECF No. 1-9.) On August 17,

4

2017, John Woodfin, Jr., sent Beatley and the Defendants another letter on behalf of GL stating that any money the parties receive through the settlement should be "remitted immediately and directly to [GL]" in order to satisfy their personal guarantees. (Compl. 8.) Beatley alleges that both the August 4 and August 17 letters were written "with the knowledge and agreement of defendants and their counsel" and were "in furtherance of the plan to defraud Beatley and to breach the Agreement." (*Id.*)

## II. Analysis: Motion to Dismiss

The Defendants move to dismiss Count Two pursuant to Federal Rule of Civil Procedure 12(b)(6)[3] for failure to state a claim. The Defendants argue that Beatley fails to state facts sufficient to support a claim for conspiracy to breach contract because Beatley did not allege a tort to support his claim. Although Beatley's Complaint does not list a tort as a separate count, Beatley's factual allegations—which the Court accepts as true at this stage of litigation—are sufficient to support a plausible claim for tortious interference, a tort that both parties agree can support a conspiracy to breach contract claim. Accordingly, the Court must deny the Defendants' Motion to Dismiss.

### A. Motion to Dismiss for Failure to State a Claim Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a

---

[3] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

5

plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Matkari*, 7 F.3d at 1134; *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed."

*Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

### B. Beatley Pleads Facts Sufficient to Establish Conspiracy to Breach Contract

"A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Gelber v. Glock*, 800 S.E.2d 800, 820 (Va. 2017). A plaintiff must allege an underlying unlawful act beyond merely the contract breach to state a claim for conspiracy to breach a contract. *See Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014) ("Actions for common law civil conspiracy . . . only lie if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious."); *Station #2, LLC v. Lynch*, 695 S.E.2d 537, 541 (Va. 2010) ("Non-performance of a contractual promise does not, without more create a basis for recovery in tort."). This "'unlawful act' element requires that at least one member of the conspiracy commit an 'underlying tort.'" *Alliance Tech. Grp., LLC v. Achieve 1, LLC*, No. 3:12cv701, 2013 WL 143500, at *8 (E.D. Va. Jan. 11, 2013).

Tortious interference with contract can constitute the underlying tort necessary to sustain a conspiracy claim. *See Dunlap*, 754 S.E.2d at 319 ("[T]ortious interference with contract . . . constitute[s] the requisite 'unlawful act' to proceed on a business conspiracy claim."); *Alliance Tech. Grp., LLC*, 2013 WL 143500, at *8 (noting that "the inducement of a breach of contract," a type of tortious interference, constitutes the requisite unlawful act for a common law conspiracy claim). To establish tortious interference with contract, the following elements must be proved:

> (1) [T]he existence of a valid contractual relationship . . . ; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy;

7

and[,] (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Dunlap*, 754 S.E.2d at 318 (quoting *Chaves v. Johnson*, 335 S.E.2d 97 (Va. 1985)).

In this case, although Beatley did not plead tortious interference as a separate count, his Complaint alleges facts sufficient, at this stage, to allow a claim for tortious interference to proceed. Because Beatley's Complaint states a claim for tortious interference, his conspiracy to breach contract claim survives the Motion to Dismiss.

### 1. Beatley Pleads that a Valid Contract Exists Between the Parties

No dispute exists that the Defendants entered into the Agreement with Beatley on June 16, 2017. The Agreement satisfies the essential elements of a valid, binding contract under Virginia law: offer, acceptance, valuable consideration, identification of the subject matter, and expression of the contract obligations with reasonable certainty. *See Montagna v. Holiday Inns, Inc.*, 269 S.E.2d 838, 844 (Va. 1980). Accordingly, Beatley sufficiently pleads facts that allow the Court to infer that a valid contractual relationship exists between Beatley and the Defendants.

### 2. Beatley Pleads that the Alleged Interferors Knew of the Contract

To state a claim for tortious interference with contract, Beatley must allege facts sufficient for the Court to reasonably infer that the Defendants had "knowledge of the contract with which [they] interfer[ed] and of the fact that [they] interfer[ed] with the performance of the contract." *Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 78 Fed. App'x 905, 911 (4th Cir. 2003) (quoting *Restatement (Second) of Torts* § 766i (Am. Law Inst.)).

Beatley pleads facts sufficient to support the inference that the Defendants knew they entered into the Agreement with Beatley. The Defendants participated in the mediation proceedings, they signed the Agreement, and they took part in the status conference.

Beatley's Complaint also provides sufficient factual allegations, at this stage, that Defendants knew they were interfering with the performance of the Agreement. Beatley alleges

that Costen and Ayers knew of Walsh's July 13, 2017 phone call, and that all of the Defendants were aware of Woodfin, Jr.'s August 4, 2017 and August 17, 2017 letters. Beatley asserts that the Defendants conspired with Woodfin, Jr., during weekly Monday meetings that took place before and after the parties reached the Agreement. Accordingly, Beatley's Complaint alleges facts sufficient to support a plausible inference that the Defendants knew of both the Agreement and their interference with its performance.

### 3. Beatley Pleads that the Intentional Interference with Contract Induced or Caused a Breach

"Although a party to a contract can be liable for conspiring to breach his own contract, such a conspiracy requires the party to the contract to unite with a third person in effecting the breach of contract." *Fox v. Deese*, 362 S.E.2d 699, 708 (Va. 1987). Although Beatley names only the Defendants in his Complaint, Beatley alleges a conspiracy involving more than just the Defendants. Beatley alleges that Kevin Walsh and John Woodfin, Jr., neither of whom were parties to the Agreement and Richmond City Lawsuit, also participated in planning and executing the conspiracy. Because Beatley alleges that the Defendants conspired with individuals not parties to the Agreement, Beatley pleads facts sufficient to support a claim for conspiracy to breach contract.

Beatley alleges facts, which the Court takes as true at this early stage, supporting the plausible inference that the conspiracy was intentionally crafted and executed to induce or cause a breach of the Agreement. Beatley asserts that the Defendants never intended to fulfill their obligations under the Agreement. Instead, Beatley contends that the Defendants signed the Agreement only to avoid trial and the possibility of an adverse verdict. Additionally, Beatley avers that by making financial demands upon him before and after July 17, 2017 (the date by which the Agreement required the Defendants to pay Beatley $134,000), the Defendants, Kevin Walsh, and John Woodfin, Jr., hoped to discourage Beatley from enforcing the Agreement.

9

The facts Beatley asserts also support the reasonable inference that Defendants' intentional interference caused a breach. Beatley states that the Defendants failed to pay him $134,000 by July 17, 2017, and that they have failed to use their best efforts to assume the Fulton Bank loan, both of which are provisions of the Agreement. Accordingly, Beatley alleges facts, when viewed as they must be at this stage, sufficient to permit a plausible inference that the Defendants conspired with Kevin Walsh and John Woodfin, Jr.—neither of whom are parties to the Agreement—to intentionally interfere with the Agreement, resulting in the breach of the Agreement.

### 4. **Beatley Pleads that He Suffered Damage Because of the Interference**

The final element necessary to prove tortious interference is "resultant damage to the party whose relationship or expectancy has been disrupted." *Chaves v. Virginia*, 335 S.E.2d 97, 102 (Va. 1985). Beatley alleges that he has been damaged as a result of the Defendants' failure to comply with the Agreement. He contends that had he known the Defendants did not intend to fulfill the terms of the Agreement, he would not have entered into the Agreement, meaning his case would have proceeded to trial, possibly to a beneficial verdict. Also, the Defendants' failure to fulfill their obligations under the Agreement—the timely payment of the $134,000 and a good faith effort to assume the Fulton Bank loan—disrupted Beatley's expectancy. Beatley claims that these damages amount to "at least $291,000, plus [Beatley's] share of the cost of the mediation in the amount of $3,445.22, plus any other damages, cost, expenses and attorney's fees incurred as a result of the defendants' failure to assume the Fulton Bank Loan." (Compl. 13.)

Taking Beatley's factual allegations as true, and viewing the Complaint in the light most favorable to Beatley, he alleges facts sufficient to establish that: (1) Beatley is in a valid contractual relationship with the Defendants; (2) the Defendants knew about their obligations to

Beatley per the Agreement; (3) the Defendants coordinated with third parties in order to cause a breach of the Agreement; and, (4) the breach has damaged Beatley both by delaying the fulfillment of the Agreement and by depriving Beatley of trial in the Richmond City Lawsuit. *See Dunlap*, 754 S.E.2d at 318 (quoting *Chaves v. Johnson*, 335 S.E.2d 97 (Va. 1985)). Because Beatley pleads facts sufficient, at this early stage, to state a claim for tortious interference, his conspiracy to breach contract claim survives the Defendants' Motion to Dismiss.

### III. The Case Will Be Reassigned

The Court makes a voluntary statement pursuant to 28 U.S.C. § 455[4] and the Canons of the Code of Conduct for the United States Judges for the purpose of allowing parties to determine any perception regarding the Court's ability to be fair and impartial. In reviewing the nature of the allegations in the case at bar, the Court sees that several parties to this contract may have a relationship to secondary schools or a law school with which the undersigned has longstanding connection, including through personal or familial employment, past or present. While the Court sees no basis for mandatory recusal pursuant to Canon 3C,[5] the undersigned remains aware that several individuals who may offer evidence are well known to this adjudicator. Because others who may offer evidence, including Beatley, are not well known to the Court, it is in the interest of justice to consider reassignment of this matter.

The Court's ruling on the Motion to Dismiss does not affect Beatley's position negatively, so the Court issues this decision. However, in order to avoid even an appearance of impropriety, the undersigned will recuse herself from further proceedings in this matter. The

---

[4] Section 455 governs disqualification of a justice, judge, or magistrate judge of the United States. *See* 28 U.S.C. § 455.

[5] Canon 3C provides in part that a judge "*shall* disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." *Code of Conduct for United States Judges*, 175 F.R.D. 363, 369 (1998).

11

Court will order the Clerk to reassign this case to another United States District Judge in accordance with the Clerk's standard assignment procedure.

## IV. Conclusion

For the foregoing reasons, the Court will deny the Defendants' Motion to Dismiss. An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 6/26/18
Richmond, Virginia